IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FRED R. JUAREZ,

    Petitioner,　　　　　　　　　　No. 2:11-cv-1811 KJM JFM  (HC)

  vs.

S.M. SALINAS,　　　　　　　　　　　　<u>ORDER AND</u>

    Respondent.　　　　　　　　　　<u>FINDINGS & RECOMMENDATIONS</u>

_____/

       Petitioner, a state prisoner proceeding pro se, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, together with a request to proceed in forma pauperis. Petitioner, however, has paid the filing fee.  Therefore, petitioner's request to proceed in forma pauperis will be denied as moot.

       Rule 4 of the Rules Governing Section 2254 Cases allows a district court to dismiss a petition if it "plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court ...." Rule 4 of the Rules Governing Section 2254 Cases.  The court must summarily dismiss a petition "[if it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court...." Habeas Rule 4; <u>O'Bremski v. Maass</u>, 915 F.2d 418, 420 (9th Cir. 1990); <u>see also</u> <u>Hendricks v. Vasquez</u>, 908 F.2d 490 (9th Cir. 1990).  Habeas Rule 2© requires that a

1

petition (1) specify all grounds of relief available to the Petitioner; (2) state the facts supporting each ground; and (3) state the relief requested. Notice pleading is not sufficient; rather, the petition must state facts that point to a real possibility of constitutional error. Rule 4, Advisory Committee Notes, 1976 Adoption; O'Bremski, 915 F.2d at 420. Allegations in a petition that are vague, conclusory, or palpably incredible are subject to summary dismissal. Hendricks, 908 F.2d at 491.

Further, the Advisory Committee Notes to Rule 8 indicate that the court may dismiss a petition for writ of habeas corpus, either on its own motion under Rule 4, pursuant to the respondent's motion to dismiss, or after an answer to the petition has been filed. Advisory Committee Notes to Habeas Rule 8, 1976 Adoption; see Herbst v. Cook, 260 F.3d 1039 (9th Cir. 2001).

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at different result. Early v. Packer, 537 U.S. 3, 7 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-406 (2000)).

Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle

from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. Williams, 529 U.S. at 413. A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'").

In the petition pending before this court, petitioner seeks habeas relief on the grounds that the Board of Parole Hearings ("the Board") violated the Due Process Clause, the Equal Protection Clause, the Ex Post Facto Clause and the Eighth Amendment by finding petitioner ineligible for parole on May 26, 2010. Petitioner is currently serving a 26-year-to-life sentence following his 1985 conviction for first degree murder. Pet. at 1. On May 26, 2010, petitioner appeared before the Board for a parole consideration hearing. See Pet., Ex. A. Petitioner appeared at and participated in the hearing. See id. Following deliberations held at the conclusion of the hearing, the Board announced their decision to deny petitioner parole and the reasons for that decision. Id. at 67-74.

A.  Due Process Clause

Petitioner first asserts that the Due Process Clause was violated by the Board's determination that petitioner was unsuitable for parole.

The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives a person of life, liberty, or property without due process of law. A litigant alleging a due process violation must first demonstrate that he was deprived of a liberty or property interest protected by the Due Process Clause and then show that the procedures attendant upon the deprivation were not constitutionally sufficient. Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 459-60 (1989).

A protected liberty interest may arise from either the Due Process Clause of the

United States Constitution "by reason of guarantees implicit in the word 'liberty,'" or from "an expectation or interest created by state laws or policies." Wilkinson v. Austin, 545 U.S. 209, 221 (2005) (citations omitted). See also Board of Pardons v. Allen, 482 U.S. 369, 373 (1987). The United States Constitution does not, of its own force, create a protected liberty interest in a parole date, even one that has been set. Jago v. Van Curen, 454 U.S. 14, 17-21 (1981); Greenholtz v. Inmates of Neb. Penal, 442 U.S. 1, 7 (1979) (There is "no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."). However, "a state's statutory scheme, if it uses mandatory language, 'creates a presumption that parole release will be granted' when or unless certain designated findings are made, and thereby gives rise to a constitutional liberty interest." Greenholtz, 442 U.S. at 12. See also Allen, 482 U.S. at 376-78.

California's parole statutes give rise to a liberty interest in parole protected by the federal due process clause. Swarthout v. Cooke, 562 U.S. ___ (2011), No. 10-333, 2011 WL 197627, at *2 (Jan. 24, 2011). In California, a prisoner is entitled to release on parole unless there is "some evidence" of his or her current dangerousness. In re Lawrence, 44 Cal.4th 1181, 1205-06, 1210 (2008); In re Rosenkrantz, 29 Cal.4th 616, 651-53 (2002). However, in Swarthout the United States Supreme Court held that "[n]o opinion of [theirs] supports converting California's 'some evidence' rule into a substantive federal requirement." Swarthout, 2011 WL 197627, at *3. Rather, the protection afforded by the federal due process clause to California parole decisions consists solely of the "minimal" procedural requirements set forth in Greenholtz, specifically "an opportunity to be heard and . . . a statement of the reasons why parole was denied." Id. at *2-3.

Petitioner does not allege that he was not afforded constitutionally adequate process as defined in Swarthout—that is, that he was denied a meaningful opportunity to be heard or a statement of reasons why the Board denied him parole. Rather, it appears from the petition that petitioner was given the opportunity to be heard at his 2010 parole suitability

4

1  hearing and received a statement of the reasons why parole was denied. This is all that due
2  process requires. Swarthout, 131 S. Ct. at 862-63. Accordingly, petitioner is not entitled to
3  relief on this claim.
4  B.       Equal Protection Clause
5           Petitioner next asserts generally that the Board's decision violated his right to
6  equal protection of the laws. However, petitioner does not allege any facts that would support
7  such a generalized claim.
8           Prisoners are protected under the Equal Protection Clause of the Fourteenth
9  Amendment from invidious discrimination based on race, religion, or membership in a protected
10 class subject to restrictions and limitations necessitated by legitimate penological interests.
11 Wolff v. McDonnell, 418 U.S. 539, 556 (1974); Bell v. Wolfish, 441 U.S. 520, 545-46 (1979).
12 The Equal Protection Clause essentially directs that all persons similarly situated should be
13 treated alike. City of Cleburne, Texas v. Cleburne Living Center, 473 U.S. 432, 439 (1985).
14 Violations of equal protection are shown when a respondent intentionally discriminated against a
15 petitioner based on membership in a protected class, Lee v. City of Los Angeles, 250 F.3d 668,
16 686 (9th Cir. 2001), or when a respondent intentionally treated a member of an identifiable class
17 differently from other similarly situated individuals without a rational basis, or a rational
18 relationship to a legitimate state purpose, for the difference in treatment, Village of Willowbrook
19 v. Olech, 528 U.S. 562, 564 (2000).
20          Here, petitioner has neither alleged nor shown that membership in a protected
21 class was the basis of any alleged discrimination. The court does not find any factual basis for
22 an inference of an intent to discriminate based on an impermissible characteristic. Petitioner
23 states only that California's sentencing scheme allows the Board to "comply with the [some
24 evidence] standard today, and tomorrow skirt it's [sic] principles or apply it to one case and not
25 another." The court concludes that the facts alleged by petitioner in his claim pursuant to the
26 Equal Protection Clause fail to entitle petitioner to habeas corpus relief. Therefore, this claim

1  should be dismissed without leave to amend.

2  C.	<u>Ex Post Facto Clause</u>

3  Petitioner also seeks relief on the ground that California's "Proposition 9" violates
4  the ex post facto clause of the federal constitution.  Proposition 9, also known as the "Victims'
5  Bill of Rights Act of 2008: Marsy's Law," effected an amendment of Cal. Pen. Code §
6  3041.5(b)(3) on November 4, 2008 that resulted in a lengthening of the period between parole
7  suitability hearings.

8  Under the statute as it existed prior to the enactment of "Marsy's Law,"
9  indeterminately-sentenced inmates, such as petitioner, were denied parole for one year unless the
10 Board found, with stated reasons, that it was unreasonable to expect that parole could be granted
11 the following year, in which case the subsequent hearing could be extended up to five years. Cal.
12 Penal Code § 3041.5(b)(2) (2008).  However, at his 2009 parole hearing, petitioner was subject
13 to the terms of the amended statute, which authorizes denial of a subsequent parole hearing for a
14 period of up to fifteen years.  Cal. Pen. Code, § 3041.5(b)(3) (2010).  The Board applied Marsy's
15 Law to petitioner, ordering that the next parole hearing date be held in five years.  Petitioner
16 contends this extension violates the Ex Post Facto Clause because it effectively forces petitioner
17 to serve a sentence nine years beyond the base suggested term for his crime of 21 years.  <u>See</u> Cal.
18 Code of Regs., tit. 15, § 2403(c).

19 The Constitution provides, "No State shall ... pass any ... ex post facto Law."
20 U.S. Const. art I, § 10.  The Ex Post Facto Clause prohibits any law which: 1) makes an act done
21 before the passing of the law, which was innocent when done, criminal; 2) aggravates a crime
22 and makes it greater than it was when it was committed; 3) changes the punishment and inflicts a
23 greater punishment for the crime than when it was committed; or 4) alters the legal rules of
24 evidence and requires less or different testimony to convict the defendant than was required at
25 the time the crime was committed.  <u>Carmell v. Texas</u>, 529 U.S. 513, 522 (2000).  Application of
26 a state regulation retroactively to a defendant violates the Ex Post Facto Clause if the new

6

1 regulations create a "sufficient risk" of increasing the punishment for the defendant's crimes.
2 Himes v. Thompson, 336 F.3d 848, 854 (9th Cir. 2003) (citing Cal. Dep't of Corr. v. Morales,
3 514 U.S. 499, 509 (1995)).  When the rule or statute does not by its own terms show a significant
4 risk, the petitioner must demonstrate, by evidence drawn from the rule's practical
5 implementation by the agency charged with exercising discretion, that its retroactive application
6 will result in a longer period of incarceration than under the earlier rule.  Garner v. Jones, 529
7 U.S. 244, 250, 255 (2000).

California Penal Code section 3041.5 has been amended several times since the date of petitioner's conviction to allow for longer periods of time between parole suitability hearings.  Ex Post Facto challenges to those amendments have all been rejected.  See Morales, 514 U.S. at 509 (1981 amendment to Cal. Penal Code § 3041.5, which increased maximum deferral period of parole suitability hearings to five years did not violate the Ex Post Facto Clause because it simply altered the method of setting a parole release date and did not create a meaningful "risk of increasing the measure of punishment attached to the covered crimes"); Watson v. Estelle, 886 F.2d 1093, 1097-98 (9th Cir. 1989) (not a violation of the Ex Post Facto Clause to apply § 3041.5(b)(2)(A) to prisoners sentenced to life imprisonment prior to the implementation of California's Determinate Sentence Law in 1977); Clifton v. Attorney General Of the State of California, 997 F.2d 660, 662 n.1 (9th Cir. 1993) (same).  See also Garner, 529 U.S. at 249 (upholding Georgia's change in the frequency of parole hearings for prisoners serving life sentences, from three to eight years, in an action brought pursuant to 42 U.S.C. § 1983); Wilkinson v. Dotson, 544 U.S. 74 (2005) (holding that inmates are not required to bring their challenges to the constitutionality of state parole procedures in habeas petitions exclusively, but may pursue their claims in § 1983 actions).

Recently, the Ninth Circuit overturned a district court decision granting preliminary injunctive relief to plaintiffs in a class action seeking to prevent the Board from enforcing the amended deferral periods established by Marsy's Law.  Gilman v. Schwarzenegger,

7

638 F.3d 1101 (9th Cir. 2011).  The court found it unlikely that plaintiffs would succeed on the merits of their underlying challenge premised on the Ex Post Facto Clause.  The court initially compared and contrasted Marsy's Law with existing Supreme Court precedent:

> Here, as in Morales and Garner, Proposition 9 did not increase the statutory punishment for any particular offense, did not change the date of inmates' initial parole hearings, and did not change the standard by which the Board determined whether inmates were suitable for parole.  However, the changes to the frequency of parole hearings here are more extensive than the change in either Morales or Garner.  First, Proposition 9 increased the maximum deferral period from five years to fifteen years. This change is similar to the change in Morales (i.e., tripled from one year to three years) and the change in Garner (i.e., from three years to eight years). Second, Proposition 9 increased the minimum deferral period from one year to three years. Third, Proposition 9 changed the default deferral period from one year to fifteen years.  Fourth, Proposition 9 altered the burden to impose a deferral period other than the default period .... Neither Morales nor Garner involved a change to the minimum deferral period, the default deferral period, or the burden to impose a deferral period other than the default period.

2011 WL 198435, at *5.  However, the Ninth Circuit found these distinctions non-dispositive due to the availability of advance parole hearings at the Board's discretion, reasoning that, "as in Morales, an advance hearing by the Board 'would remove any possibility of harm' to prisoners because they would not be required to wait a minimum of three years for a hearing."  Id. at *6 (quoting Morales, 514 U.S. at 513).  The Ninth Circuit concluded that plaintiffs had failed to demonstrate a significant risk that their incarceration would be prolonged by application of Marsy's Law, and thus found that plaintiffs had not established a likelihood of success on the merits of their ex post facto claim.

      Here, the Board's application of the guidelines did not increase petitioner's sentence: petitioner's sentence of twenty-six years to life carries no guaranteed parole date but rather carries with it the potential that he could serve the entire term.  Furthermore, the California parole board is still vested with broad discretion in selecting a date of rehearing from three years to fifteen years.  The Board retains the discretion to advance a hearing at any time should there be a change in circumstances.  The Board

8

>may in its discretion, after considering the views and interests of the victim, advance a hearing set pursuant to paragraph (3) to an earlier date, when a change in circumstances or new information establishes a reasonable likelihood that consideration of the public and victim's safety does not require the additional period of incarceration of the prisoner provided in paragraph (3).

Cal. Penal Code § 3041.5(b)(4). Proposition 9 does not create more than a " 'speculative and attenuated possibility of producing the prohibited effect of increasing the measure of punishment for covered crimes.' " Garner, 529 U.S. at 251 (quoting Morales, 514 U.S. at 509). Since habeas jurisdiction does not exist when the petitioner's challenge does not necessarily result in a reduction of his term of imprisonment, Ramirez v. Galaza, 334 F.3d 850, 859 (9th Cir. 2003) ("[H]abeas jurisdiction is absent ... where a successful challenge to a prison condition will not necessarily shorten the prisoner's sentence."), this ground for relief is summarily rejected for failure to implicate this court's habeas jurisdiction. Thus, the undersigned recommends denying leave to amend as to this claim.

D.     Cruel and Unusual Punishment

Finally, petitioner generally alleges that the Board's decision constituted cruel and unusual punishment.

"There is no right under the Federal Constitution to be conditionally released before the expiration of a valid sentence, and the States are under no duty to offer parole to their prisoners." Swarthout, 131 S. Ct. at 862. However, a criminal sentence that is "grossly disproportionate" to the crime for which a defendant is convicted may violate the Eighth Amendment. Lockyer v. Andrade, 538 U.S. 63, 72 (2003); Harmelin v. Michigan, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring); Rummel v. Estelle, 445 U.S. 263, 271 (1980).

Outside of the capital punishment context, the Eighth Amendment prohibits only sentences that are extreme and grossly disproportionate to the crime. United States v. Bland, 961 F.2d 123, 129 (9th Cir. 1992) (quoting Harmelin, 501 U.S. at 1001). Such instances are "exceedingly rare" and occur in only "extreme" cases. Lockyer, 538 U.S. at 72-73; Rummel, 445 U.S. at 272. So long as a sentence does not exceed statutory maximums, it will not be

considered cruel and unusual punishment under the Eighth Amendment. See United States v. Mejia-Mesa, 153 F.3d 925, 930 (9th Cir. 1998); United States v. McDougherty, 920 F.2d 569, 576 (9th Cir. 1990). Further, it has been held that a sentence of fifty years to life for murder with use of a firearm is not grossly disproportionate. Plascencia v. Alameida, 467 F.3d 1190, 1204 (9th Cir. 2006).

Here, petitioner was convicted of first degree murder. The punishment for first degree murder ranges from twenty-five (25) years to life to punishment by death. Cal. Pen. Code § 190(a). Petitioner was sentenced to twenty-five years to life. Accordingly, petitioner's sentence thus does not exceed the statutory maximum.

Further, the actions of the Board do not constitute cruel and unusual punishment. Petitioner explains that being rejected for parole by the Board in light of satisfaction of the required standards for parole eligibility violates the Eighth Amendment. Petitioner's disappointment is understandable. However, the Board's decision, while lengthening his physical term of confinement, does not change his original sentence. As petitioner is serving an indeterminate sentence, it is possible that he may be paroled, but it is also possible that he shall remain incarcerated for the entire life term. Petitioner has not stated facts that would entitle him to Federal habeas relief under the Eighth Amendment's prohibition against cruel and unusual punishment.

In view of the pertinent state statutory scheme, it does not appear that petitioner could allege a tenable cruel and unusual punishment claim. It will be recommended that petitioner's cruel and unusual punishment claim be dismissed without leave to amend.

Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the Court of Appeals from the final order in a habeas proceeding in which the detention complained of arises out of process issued by a state court. 28 U.S.C. § 2253(c)(1)(A); Miller–El v. Cockrell, 537 U.S. 322, 336 (2003). A certificate of appealability may issue only if the applicant makes a substantial showing of the denial of a constitutional

right. § 2253(c)(2). Under this standard, a petitioner must show that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. Miller–El v. Cockrell, 537 U.S. at 336 (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)).  A certificate should issue if the petitioner shows that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in any procedural ruling. Slack v. McDaniel, 529 U.S. 473, 483–84 (2000).  In determining this issue, a court conducts an overview of the claims in the habeas petition, generally assesses their merits, and determines whether the resolution was debatable among jurists of reason or wrong. Id.  It is necessary for an applicant to show more than an absence of frivolity or the existence of mere good faith; however, it is not necessary for an applicant to show that the appeal will succeed. Miller–El v. Cockrell, 537 U .S. at 338.

A district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  Rule 11(a) of the Rules Governing Section 2254 Cases.

Here, it does not appear that reasonable jurists could debate whether the petition should have been resolved in a different manner.  Petitioner has not made a substantial showing of the denial of a constitutional right.  Accordingly, the court should decline to issue a certificate of appealability.

Based on the foregoing, IT IS HEREBY ORDERED that petitioner's July 11, 2011 motion to proceed in forma pauperis is denied as moot; and

IT IS HEREBY RECOMMENDED that:

1. Petitioner's petition for a writ of habeas corpus be dismissed without leave to amend; and

2. The court decline to issue a certificate of appealability.

/////

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: December 22, 2011.

_____
UNITED STATES MAGISTRATE JUDGE

/014;juar1811.114